**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**ALEXANDRIA DIVISION**

| | |
|---|---|
| **LACAZE LAND DEVELOPMENT L L C** | **CIVIL ACTION NO. 1:19-cv-01477** |
| **VERSUS** | **JUDGE DRELL** |
| **DEERE & COMPANY INC, et al** | **MAG. JUDGE PEREZ-MONTES** |

**PLAINTIFF'S RESPONSE TO  MOTION FOR SUMMARY JUDGMENT FILED ON BEHALF OF AMERISURE PARTNERS INSURANCE COMPANY**

**MAY IT PLEASE THE COURT:**

NOW INTO COURT, through undersigned counsel, come plaintiff, Lacaze Land Development, LLC , who respond to the  motion for summary judgment filed by Amerisure Partners Insurance Company (Amended Complaint answered as "Amerisure Insurance Company ("Amerisure")) (Doc 41), as follows:

**Introduction.**

In this redhibition case involving plaintiff's purchase on or about August 31, 2018, of a  new John Deere 333GX compact track loader, skid steer (hereinafter "loader"), with factory options, from **W. L. DOGGETT, LLC**, **d/b/a DOGGETT MACHINERY SERVICES,** (hereinafter "Doggett") in Alexandria, Louisiana, Doggett's CGL insurer files a motion for summary judgment allegeing that under the policy issued to Doggett, there was no "occurrence" that would trigger coverage under the policy. For the following reasons, plaintiff shows the motion is not well taken and should be denied.

1

**I.  Plaintiff contends *Hollybrook Cottonseed Processing, L.L.C v. American Guarantee & Liability Ins. Co.,* infra, applies.**

Amerisure concentrates its argument mainly on whether or not an "occurrence", as defined by the policy, includes plaintiff's claims.  The provisions found on page 1 of the COMMERCIAL GENERAL LIABILITY COVERAGE FORM, which appears on page 26 of Doc 43-3, the policy is applicable.  That provision, under "SECTION 1-COVERAGES COVERAGE A 1. Insuring agreement a." states that "[w]e will pay those sums that the insured becomes legally obligated to pay as damages because of ...'property damage' to which this insurance applies."  Section b. states "This insurnac applies to ... 'property damage' only if" ... "property damage" is caused by an "occurrence". The cases cited by Amerisure in its memorandum are inapposite.  Each of those cases concentrated on the act of sale or failure to disclose defects not being found, as a matter of law, to meet the definition of an "occurrence".

However, the issue of an "occurrence" has been defined to include repeated mechanical failures resulting in "economic damages", which fall within the definition of "property damage". *Hollybrook Cottonseed Processing, L.L.C. v. Am. Guarantee & Liab. Ins. Co.,* 772 F.3d 1031(5th Cir.2014).  In that redhibition case, Hollybrook contracted with Carver, Inc. for equipment that suffered repeated mechanical breakdowns, which caused the entire Hollybrook plant to lose the use of downstream equipment and production.  Two different judges at the district court level, Judge Foote and Judge Walter found that Louisiana law controlled the interpretation of the insurance policies in question, that "Martco Ltd. P'ship v. Wellons, Inc., 588 F.3d 864, 879 (5th Cir.2009). Judge Foote found that Hollybrook's claims for "economic damages" fell within the definition of "property damage" under the terms of the insuring agreement, meaning that if a jury were to find

2

Carver liable coverage would be available unless an exclusion in the policy applied to preclude coverage."   Judge Walter, in footnote 9, dismissed the lack of an "occurrence" argument because the evidence of repeated breakdowns caused Hollybrook to lose the use of its plant.[1]

The court also found that  " the "your product" and/or "your work" exclusions precluded recovery for any costs associated with repairing or replacing the Carver equipment, or for any other damages attributable to the defects in Carver's equipment" and that although "the exclusion precludes coverage for any damages arising from the cost of repairing or replacing the Carver equipment itself, noting that Louisiana jurisprudence has consistently recognized that a CGL policy is not intended to guarantee the quality of an insured's product or work ... that coverage remained for consequential damages that Hollybrook may have incurred as a result of damage to "other property" (i.e.non-Carver)". *Hollybrook Cottonseed Processing, LLC v. Carver, Inc*., CIV.A. 09-0750, 2013 WL 6903901, at *1 (W.D. La. Dec. 30, 2013), aff'd in part, rev'd in part and remanded sub nom. *Hollybrook Cottonseed Processing, L.L.C. v. Am. Guarantee & Liab. Ins. Co.*, 772 F.3d 1031 (5th Cir.2014). [2]

---

[1] "AGLIC also argues that Hollybrook failed to present evidence of an "occurrence" necessary to give rise to coverage. The court disagrees. A jury previously decided that Hollybrook lost use of its plant and/or non-Carver equipment contained therein because of a sudden and accidental physical injury to the Carver equipment. The court also recalls evidence of repeated breakdowns of the hi-cel causing Hollybrook to lose the use of its plant. This is sufficient to establish an "occurrence" as defined in the policy, which is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." [Doc. # 579, Sentry Policy, Section V "Definitions" pg. 16]. See Martco, 588 F.3d at 879 (citing Rando v. Top Notch Props., LLC, 879 So.2d 821, 833 (La.Ct.App.2004)("[T]he clear weight of the authority [ ] considers defects in construction that result in damage subsequent to completion to be 'accidents' and 'occurrences' when they manifest themselves."))."   (Emphasis supplied)

[2] Although Amerisure makes no argument on the "Products-completed operations hazard", it exists in the policy, filed as Doc 43-3, page 40.

3

The U.S. Fifth Circuit partially reversed and also held that attorney fees recoverable in a redhibitory action are "damages" covered by the CGL policy.  The rest of the decision was affirmed. The Court of Appeals found that "American fails to show that the 'work product' exclusion unambiguously applies to the loss of use of the entire plant in this case."

Thus, plaintiffs do have coverage for economic damages excluding repair or replacement of the skid/steer loader.

Likewise, the argument herein by Amerisure that Exclusion K and L regarding "property damage" and "your product" or "your work" .... included in the "products-completed operations hazard", was taken care of by *Hollybrook*, supra, stating, once against that economic losses are not excluded.  Further, attorney's fees were included in the coverages demonstrated.


## II.  Plaintiff shows that genuine issues of material fact apply.

 So, does plaintiff allege and show that he suffered repeated breakdowns and resulting "economic damages"?  Plaintiff states in the complaint, paragraph 18, that has had authorized warranty service by defendant Doggett, as Deere's authorized service dealer, on numerous occasions from the date of its purchase; the loader continues to this day to exhibit some or all of the non-conformities described herein and in fact exhibits malfunctions to the extent that the loader is completely useless to the plaintiff and is not being used and is presently at Doggett for continued repairs.  Those excessive mechanical breakdowns are described in paragraph 17.  It also alleges in paragraph 35, that it suffered "lost profits and/or income to plaintiff and has caused extra expenses because of the loader being unavailable", and, paragraph  39, that it has incurred attorney's fees and has employed an attorney to assert its claims.  The prayer also includes the claims for incidental and

consequential damages, out of pocket damages related to any cost of repairs, deductibles and transportation charges, past and future economic loss, and attorney's fees.

Plaintiff has backed up the allegations of the complaint with documents and in his deposition. Mr. Michael Lacaze (plaintiff limited liability company's sole member), testified that he began having difficulties within the first two or three weeks he had the machine (page 35, deposition, Exhibit A) as a result of the downtime caused by the defects such as the wiper motor binding, loud noise coming from the turbo, throwing repetive codes, low coolant level, hydraulic pump replacement, and a replaced air coolant hose, (page 40, 41 - 47, Exhibit A ). Other defects followed, such as water pump being replaced due to overheating, and he replaced the mulching head purchased with the machine in March of 2020, (page 50 - 53).  Mr. Laze testified as a result of the time for repair and repeated breakdowns, he  has suffered not being able to pay bills on time,  and has been falling behind due to all the mechanical breakdowns, has incurred extra expenses ($5,000.00 a month) of renting a bulldozer, has had to take out a loan from his parents ($11,200.00) for operating expenses and to pay bills, and is seeking attorney's fees  (pages 66 - 69, 95 - 97 deposition, Exhibit A). Mr. Lacaze attempted repairs by replacing the mulching head (pages 97-98). Attached as Exhibit B is the sales invoice showing the purchase price was $85,150.08.

As stated in the complaint, the loader was a replacement for a previous same or similar model loader owned by plaintiff that had caught on fire and was destroyed and exhibited similar problems described below for the loader sued on; the sale of the newer loader to plaintiff, and sued on herein, was made with certain accommodations from the defendants to aid in the sale and in compensation for the defects present in the previous loader that caused numerous breakdowns and its eventual destruction by fire, including financing of the replacement loader. (Doc 1, para 10; Exhibit A,

5

deposition, pages  14, 15, 24, 25, 102 and 103).   Not counting the purchase price, economic damages for the cost for replacing the mulching head, and attachment and not part of the original sales price, and rental of a bulldozer is $45,779.53.

Therefore, economic damages that can be quantified at this time exceed $56,000.00 (loans from parents and mulching head and rental fees).   Under *Hollybrook Cottonseed Processing, L.L.C. v. Am. Guarantee & Liab. Ins. Co.*, supra, these would be covered, as well as attorney's fees by the Amerisure policy.

## CONCLUSION

Plaintiff is not claiming coverage under Amerisure's policy for the return of the purchase price.  Under  *Hollybrook Cottonseed Processing, L.L.C. v. Am. Guarantee & Liab. Ins. Co.*, supra, the issue of an "occurrence" has been defined to include "repeated breakdowns" and the resulting "economic damages" caused falls within the definition of "property damage".  Plaintiff has shown by his testimony and exhibits that repeated breakdowns caused economic damages in the form of hiring a bulldozer to do work and buying a mulching head motor that caused failure of the loader, and has had to borrow money to stay afloat.

Respectfully submitted,

*s/ Fred A. Pharis*

**FRED A. PHARIS**
of **PHARIS LAW OFFICES**
831 DeSoto Street
Alexandria, LA  71301
Telephone:  (318) 445-8266
Fax: (318) 445-5981
Bar Roll No. 1536
Email: fpharis@pharislaw.com
**ATTORNEY FOR PLAINTIFF, LACAZE LAND
DEVELOPMENT, LLC**