UNITED STATE DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA DIVISION

**LACAZE LAND DEVELOPMENT, LLC**
*Plaintiff*

v.                                                               CIVIL ACTION NO.:1:19-cv-01477

**DEERE & COMPANY, INC. and
W. L. DOGGETT, LLC d/b/a
DOGGETT MACHINERY SERVICES**          **CHIEF JUDGE DEE D. DRELL**
*Defendants*                                                **MAG. JUDGE PEREZ-MONTES**

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## STATEMENT OF MATERIAL FACTS NOT GENUINELY DISPUTED

1. On or about July 16, 2018, W.L. Doggett, LLC ("Doggett") allowed the Plaintiff, Lacaze Land Development, LLC, to use a John Deere 333G Skid Steer Compact Track Loader ("2018 Skid Steer" or "the machine") as a "loaner" while the Plaintiff was undertaking an insurance claims process for the total loss of Plaintiff's 2017 John Deere 333G Skid Steer Compact Track Loader ("2017 Skid Steer") due to a fire. This 2018 Skid Steer is identified by its PIN: 1T033GMLJF326996. [1]

2. In particular, on or about July 16, 2018, Doggett removed the Plaintiff's mulching head attachment from the 2017 Skid Steer and installed the attachment onto the 2018 Skid Steer. That same day, Doggett additionally installed a "heavy duty package" onto the 2018 Skid Steer. [2]

---

[1] Exhibit D in Globo p. 1. Doggett's business records and invoices enclosed alongside this motion for summary judgment were produced by Doggett in response to a request for production of documents. These materials will be authenticated at trial by Doggett's custodian of records.
[2] *Id.*

1

3. On or about July 26, 2018, the 2018 Skid Steer was returned to Doggett for shop repairs. In particular, Doggett replaced the "quick connect hoses" on the Plaintiff's mulching head attachment.[3]

4. On or about July 31, 2018, Doggett's employee conducted field repairs on the machine at the Plaintiff's request. In particular, the machine was displaying "active code: 523628.10." By this point, the machine had recorded approximately 27 hours of use, and Doggett's employee attempted to diagnose the code display. Eventually, it was discovered that a new version of the machine's software was available, and the software was therefore updated to the most recent version available. No other issues were recorded during this July 30, 2018 work-order.[4]

5. From July 31, 2018 through August 13, 2018, the machine recorded an additional thirty-five hours of use without incident before the machine registered a diagnostic trouble code ("DTC") indicating there was an issue associated with the diesel exhaust fluid ("DEF").[5]

6. On August 15, 2018, the machine was returned to Doggett's facility, and Doggett again examined the machine. In particular, Doggett's work order indicates that it performed the routine "initial 50 hour service", including taking oil samples from both final drives as well as changing the oil in both drives.[6]

7. Thereafter, on or about August 27, 2018, the Plaintiff again returned the machine to Doggett for service, where it remained for several days. The invoice for this visit made note of a routine "101 inspection" as well as "windshield wiper blade."

---

[3] Exhibit D in Globo p. 2.
[4] Exhibit D in Globo p. 4.
[5] *See* Affidavit of Steven Wienkes, Exhibit A-2, JD Link data, at p. 16.
[6] Exhibit D in Globo p. 6.

2

Doggett also noted "damage to auxiliary connections on boom and head," which did not exist at the time the machine was originally provided to the Plaintiff.[7]

8. On or about August 30, 2018, Doggett repaired the observed damage on the auxiliary connections to the boom and head, and on August 31, 2018, "taped holes for the aux connector", "installed new manifold and connected lines. Installed new couplings to the lines," topped off the fluids for the system, replaced the windshield wiper blade and test ran the device to confirm all problems had been resolved.[8]

9. There is no genuine issue of material fact that the Plaintiff was aware of the windshield wiper issues prior to the August 31, 2018 sale.

10. On August 31, 2018, Doggett sold the 2018 John Deere 333G Skid Steer Compact Track (PIN: 1T033GMLJF326996) to the Plaintiff.[9]

11. Several days later, the Plaintiff requested Doggett conduct a field repair on this machine on or about September 4, 2018. At the time of this field repair, 93 hours of use had been recorded, and the primary complaint at that time again related to the windshield wipers. In particular, it was discovered that the windshield wiper motor was binding during operation. Doggett's technician inspected the machine, verified the complaint, and removed and replaced the wiper motor, and tested the machine to confirm the wipers were working properly following repair.[10]

12. Following this repair of the windshield wiper motor, the Plaintiff used this machine for an additional 166 hours before calling on Doggett to perform any additional maintenance or repair.

---

[7] Exhibit D in Globo p. 8
[8] *Id.*
[9] R. Doc. 1, p. 3.
[10] Exhibit D in globo p. 11

3

13. On February 4, 2019, the machine had recorded 259 hours of use, and the Plaintiff requested Doggett perform field repair to assess allegedly "slow hydraulics." Doggett's employee diagnosed the issue and discovered that the hydraulic pressure for the system was below system specifications. During the course of this work, Doggett also removed the high flow solenoid valve stem from the device, which had "trash stuck in it." Doggett then proceeded to clean the trash out from the solenoid valve stem, changed the hydrostatic filter and set the hydraulic system pressure to the appropriate specification levels.[11]

14. On or about February 19, 2019, Doggett was again called on for repairs to this machine. At that time, the machine had recorded 267 hours of use. In particular, the Plaintiff's primary complaint was that the machine was displaying a hydraulic restriction code. After diagnosing the issue, Doggett determined that the hydraulic filter restriction switch was "not operating" and replaced the switch to correct the issue.[12]

15. There is no genuine issue of material fact that the 333G's hydraulic filter switch properly functioned for the machine's first 262.8 hours of use.

16. The Plaintiff returned the machine to Doggett on or about March 6, 2019, to diagnose a "loud noise" coming for the diesel engine turbo. Doggett examined the engine and surrounding area and determined that a hose in the cooling system area had been punctured. After confirming the cause of the complaint, Doggett then replaced the punctured hose, put the machine back together, and tested the machine

---

[11] Exhibit D in Globo p. 15
[12] Exhibit D in Globo pp. 17, 21.

to confirm it was "operating as designed." The machine had recorded approximately 295 hours at that time.[13]

17. On or about June 8, 2019, the Plaintiff returned the machine to Doggett to diagnose "fuel issues" he had been experiencing. At this point in time, the machine had recorded approximately 364 hours of use. After diagnosing the issue, Doggett updated the software for the EMU, engine, and HCU components. After updating the software for these items, the stored fuel issue codes disappeared, and Doggett then ran the machine "for over an hour and it never once threw a code nor did the pressure get distinctly low on the high pressure side." Doggett also determined that the "desired and actual current on the fuel pump were almost identical when monitoring those two items . . . [but] the machine had extremely low coolant level code that was stored, [which] could have caused the engine to derate to low idle." Doggett then reprogrammed the DCU with new software and completed its work.[14]

18. There is no genuine issue of material fact that the 333G's fuel rail pressure sensor properly functioned for the machine's first 364 hours of use.

19. On or about June 24, 2019, the Plaintiff again returned his machine to Doggett to diagnose issues with the machine's hydraulics. At that time, the machine had recorded approximately 408 hours of use. Doggett proceeded to then run the machine and confirmed the Plaintiff's complaint by checking the system's hydraulic pressure. Doggett determined that the hydraulic pump had failed and "contaminated the entire system."[15]

---

[13] Exhibit D in Globo p. 19; Exhibit C Deposition of Lacaze Land Development, p. 42, ll. 13-15.
[14] Exhibit D in Globo p. 23-24.
[15] Exhibit D in Globo p. 25

20. Doggett also obtained a sample of the hydraulic oil from the contaminated system.[16] That sample was submitted to Fluid Analysis, and Mr. Harold Scarborough's diagnoses for this sample was that there was "heavy concentration of water present."[17]

21. Doggett proceeded to disassemble the machine over the course of several days and ordered new parts to replace the machine's hydraulic system. After installing the new parts, Doggett filled the hydraulic tank and tested the pressures on the machine. After confirming the hydraulic charge pressure and temperature were within specification, the machine was put back together. Doggett also replaced the auxiliary manifold for the machine and the motor on the mulching head attachment and then proceeded to test the machine's mulching head attachment by mulching wood while monitoring to confirm the mulching attachment would not "bog down" while under load.[18]

22. On or about August 12, 2019, the Plaintiff returned the machine to Doggett for diagnosis of issues related to the system fuel rail pressure. At this time, the machine had recorded approximately 513 hours of use, and the machine had been displaying warning codes related to the fuel rail pressure. After diagnosing the problem, Doggett determined that the fuel rail pressure sensor had failed, replaced the failed part, and then ran the machine after exchanging the part.[19]

23. On or about August 19, 2019, the air coolant hose running from the machine's air cooler to the engine intake was replaced. At that time, the machine had recorded

---

[16] Exhibit D in Globo p. 25.
[17] Exhibit E, 07-01-19 Fluid Analysis 07-01-19 by Harold Scarborough.
[18] Exhibit D in Globo p. 25-26
[19] Exhibit D in Globo p. 34.

approximately 527 hours of use, and the Plaintiff's complained to Doggett that the "charge air cooler hose going from the charge air cooler to engine intake has a bad rubbed spot."[20]

24. The Plaintiff returned the machine to Doggett and complained of overheating issues on or about September 10, 2019. At that time, the machine had recorded approximately 594 hours of use. After examining the machine, Doggett determined that the system's fan was not coming up to speed and that the water pump for the device had failed. After examining the machine, Doggett determined that the fan's solenoid and coil parts had failed due to a failed pressure relief valve. Doggett then installed a new pressure relief valve and new solenoid coil and then confirmed the fan was operating at the desired revolutions per minute following replacement of those parts. In addition to its work on the fan issues, Doggett also replaced the water pump, gasket for the water pump, thermostat and thermostat gasket. After performing these repairs, Doggett then "ran the machine to ensure no leaks nor overheating issues."[21]

25. There is no genuine issue of material fact that the 333G's water pump functioned properly from August 31, 2018 through at least August 31, 2019.

26. The Plaintiff again called on Doggett to service the machine on or about October 7, 2019. At that time, the machine had recorded approximately 647 hours of use, and the Plaintiff's primary complaints were that the machine was overheating and losing hydraulic pressure. After inspecting the machine, Doggett "found that there was a blown seal on the manifold." Doggett then installed a new quick coupler on

---

[20] Exhibit D in Globo pp. 72-73.
[21] Exhibit D in Globo pp 36-37.

7

the device and checked hydraulic pressure to confirm the machine was operating properly.[22]

27. There is no genuine issue of material fact that the hydraulic manifold coupler for the 333G functioned properly from August 31, 2018 through at least September 30, 2019.

28. On or about October 28, 2019, the Plaintiff again returned the machine to Doggett for service. At that time, the machine had recorded 699 hours of use, and the Plaintiff's primary complaint was that the machine was displaying error codes associated with the diesel exhaust fluid ("DEF"). Doggett then drained the DEF tank, removed and replaced the DEF header tank assembly, and added new DEF to the tank. Doggett then reprogrammed the DCU, which cleared the error code, and ran the machine to verify the DEF code issue had resolved and would not return. Additionally, Doggett replaced the machine's hydraulic oil filter and added additional hydraulic fluid to the system "to reach the operating range."[23]

29. On or about November 27, 2019, the Plaintiff returned the machine to Doggett after a fire had broken out near the machine's engine. At that time, the machine had recorded approximately 724 hours of use, and Doggett's technicians proceeded to disassemble the device to repair the damage caused by the fire. During the course of this repair, Doggett noted that there was a "PRE-EXISTING coolant leak" for the machine at the time of these repairs. (emphasis original). These repairs were done over the course of at least two weeks.[24]

---

[22] Exhibit D in Globo p. 40
[23] Exhibit D in Globo pp. 42-46.
[24] Exhibit D in Globo p. 61-63.

30. Doggett additionally assessed the Plaintiff's complaint of weak hydraulic pressure on or about December 16, 2019.[25]

31. Doggett replaced the hydraulic pump for the machine for the second time on or about December 17, 2019. Additionally, Doggett examined the machine's fan, which was not working. After disassembling the fan, Doggett determined the solenoid for the fan had failed and replaced the solenoid, which allowed the fan to resume working correctly.[26]

32. On or about January 29, 2020, Doggett conducted a field service call for the Plaintiff's machine. At that time, the machine had recorded approximately 765 hours of use, and the Plaintiff was complaining of issues related to the system's hydraulic pressure. Upon arrival, Doggett ran the machine and tested the hydraulic pressure, which was within specification. Doggett's concluded that the reported issues were due to the Plaintiff attempting to use the machine's hydraulics without allowing it to properly warm up. Therefore, Doggett recommended the Plaintiff run the machine for ten minutes before proceeding with work requiring advanced hydraulic flow.[27]

33. On or about March 10, 2020, Doggett was called out to conduct another field repair of the machine by the Plaintiff. At that time, the machine had recorded 816 hours of use, and the Plaintiff's primary complaint was that the system's hydraulics were not engaging. After entering the machine, Doggett noted an error code associated with the hydraulic work port solenoid circuit. Doggett then removed the floor panel

---

[25] Exhibit D in Globo p. 56
[26] Exhibit D in Globo p. 58
[27] Exhibit D in Globo p. 60

and observed the inside of the "machine was full of debris." Doggett also observed that "a large stick had come through broke the solenoid" coil. Doggett then changed the damaged solenoid coil with a replacement and ran the machine to confirm that the issue was fixed.[28]

                                                Respectfully submitted,

                                                **/S/ PAUL M. LAVELLE**
                                                **PAUL M. LAVELLE (08134)**
                                                CODY J. ACOSTA (37005)
                                                Cotten Schmidt, L.L.P.
                                                650 Poydras Street, Suite 1950
                                                New Orleans, LA 70130
                                                Telephone: (504) 568-9393
                                                Facsimile: (504) 524-1933
                                                plavelle@cottenschmidt.com
                                                cacosta@cottenschmidt.com

**ATTORNEYS FOR DEERE & COMPANY, INC.**

**CERTIFICATE OF SERVICE**

    **I HEREBY CERTIFY** that a copy of the foregoing pleading was filed electronically with the Clerk of Court, using the CM/ECF system, this 28th day of January, 2021. Notice of filing will be sent to all counsel of record by operation of this Court's electronic filing system.

                                                **/s/ PAUL M. LAVELLE**
                                                **PAUL M. LAVELLE**

---

[28] Exhibit D p. 62.