UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA DIVISION

| | |
|---|---|
| LACAZE LAND DEVELOPMENT L L C | CASE NO. 19-cv-1477 |
| -vs- | JUDGE DRELL |
| DEERE & CO INC ET AL | MAGISTRATE JUDGE PEREZ-MONTES |

RULING AND ORDER

Before the court is a motion for summary judgment filed by defendant Amerisure Partners Insurance Company ("Amerisure") to dismiss with prejudice the claims filed against Amerisure by plaintiff Lacaze Land Development, L.L.C. ("Lacaze"). (Doc. 43). For the following reasons, Amerisure's motion for summary judgment is **GRANTED**.

I. BACKGROUND

Lacaze filed a redhibition claim over a John Deere 333GX compact loader, skid steer ("loader") and a compatible John Deere mulching head powered by the loader's hydraulic system. Both the loader and the mulching head were purchased from John Deere distributor W. L. Doggett, L.L.C. doing business as Doggett Machinery Services ("Doggett"), a Texas limited liability company with its principal place of business located in Houston, Texas and authorized to do business in the State of Louisiana. The suit was filed against Deere & Company, Inc. ("Deere"), Doggett, and Doggett's commercial general liability ("CGL") insurer Amerisure.

According to Lacaze, the loader–mulcher combination is defective because the loader overheats when used in combination with the mulching head resulting in inoperable down time, loader part failures from the overheating requiring repair, and one incident a loader fire. The damages Lacaze claims include loss of purchase price, finance charges, insurance premiums, maintenance and repair costs, and economic loss limited to the loss of use of the loader. Lacaze does not claim consequential damages to or loss of use of any other property.

Amerisure moves to dismiss the claims filed against it arguing that the damages sought by Lacaze are not covered by Dogget's insurance policy with Amerisure. In effect, Amerisure argues that it does not have a duty to either defend or indemnify Doggett from Lacaze's claims.

Relevant to Amerisure's argument, Dogget's insurance policy applies to "property damage" caused by an "occurrence." (Doc. 43–3, p. 26, CGL policy §1.1.b.1). The policy defines an "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." (Id., p. 40, CGL policy §5.13). The policy also defines "property damage" to consist of (a) physical injury to tangible property, including resulting loss of use, and (b) loss of use of tangible property not physically injured. (Id., p. 40, CGL policy §5.17). Finally, the policy excludes coverage for " 'property damage' to 'your product' arising out of it or any part of it," wherein "your product" in this particular case refers either the loader, the mulching head, or the combination thereof as a good "sold, handled, distributed or disposed of by" Doggett. (Id., p. 30, CGL policy §1.2.k; Id., p. 41, CGL policy §5.21).

## II. SUMMARY JUDGMENT STANDARD

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). A dispute of material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). We consider "all evidence in the light most favorable to the party resisting the motion." Seacor Holdings, Inc. v. Commonwealth Ins. Co., 635 F.3d 680 (5th Cir. 2011) (internal citations omitted). It is important to note that the standard for summary judgment is two-fold: (1) there is no genuine dispute as to any material fact, and (2) the movant is entitled to judgment as a matter of law.

The movant has the burden of pointing to evidence proving there is no genuine dispute as to any material fact, or the absence of evidence supporting the nonmoving party's case. The burden shifts to the nonmoving party to come forward with evidence which demonstrates the essential elements of his claim. Liberty Lobby, 477 U.S. at 250. The nonmoving party must establish the existence of a genuine dispute of material fact for trial by showing the evidence, when viewed in the light most favorable to him, is sufficient to enable a reasonable jury to render a verdict in his favor. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986); Duffy v. Leading Edge Products, Inc., 44 F.3d 308, 312 (5th Cir. 1995). A party whose claims are challenged by a motion for summary judgment may not rest on the allegations of the complaint and must articulate specific factual allegations which meet his burden of proof. Id.

"Conclusory allegations unsupported by concrete and particular facts will not prevent an award of summary judgment." Duffy, 44 F.2d at 312 (citing Liberty Lobby, 477 U.S. at 247).

### III. LAW AND ANALYSIS

Amerisure presents two arguments as to why the policy does not cover the damages Lacaze seeks. First, Amerisure argues that the damages sought by Lacaze were not caused by an "occurance" as defined in Amerisure's policy. However, this first argument is refuted by the very case law Amerisure relies on in its second argument.

In Atain Specialty Ins. Co. v. VIG II, LLC, 2017 WL 3867672, (E.D. La. Feb. 9, 2017), Gregory and Jennifer Zoglio ("Zoglios") purchased a home built by general contractor VIG II, LLC and shortly discovered numerous defects. Id. at 1. The Zoglios filed suit against VIG II, who in turn filed suit against its CGL insurer Atain. Id. at 1–2. Atain filed a declaratory judgment action, seeking a declaration it had no duty to defend or indemnify VIG II against the Zoglios' claim. Id. at 2. Judge Vance reasoned:

> The policies define "occurrence" as, "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." Louisiana courts interpret "occurrence" to include "an unforeseen and unexpected loss." North Amer. Treat. Sys. v. Scottsdale Ins., 943 So.2d 429, 444 (La. App. 1 Cir. 2006); see also Cunard Line Ltd. Co. v. Datrex, Inc., 26 So.3d 886, 890–91 (La. App. 3 Cir. 2009) (affirming trial court's determination that "the property damage caused by the defective work and/or defective products is an occurrence or accident which triggers coverage under the terms of the insurance policies"). Such a loss can arise out of faulty construction. Iberia Parish Sch. Bd. v. Sandifer & Son Constr. Co., 721 So.2d 1021, 1023 (La. App. 3 Cir. 1999) ("If the roof leaks or the wall collapses, the resulting property damage

> triggers coverage under an 'occurrence' basis policy, even if the sole cause is improper construction and the only damage is to the work performed by the contractor.") (quoting 1 William S. McKenzie and H. Alston Johnson III, INSURANCE LAW AND PRACTICE § 183, 15 La. Civ. Law Treat.). Accordingly, the damage allegedly sustained by the Zoglios constitutes an "occurrence" under the policies. See <u>Rando v. Top Notch Props.</u>, 879 So.2d 821, 825–833 (La. App. 4 Cir. 2004) (reviewing Louisiana jurisprudence about what constitutes an "occurrence" and concluding that "the clear weight of authority in more recent cases considers defects in construction that result in damage subsequent to completion to be accidents and occurrences when they manifest themselves"); <u>Massey v. Parker,</u> 733 So.2d 74, 75 (La. App. 3 Cir. 1999) (defects in home construction constituted an occurrence).

<u>Id.</u> at 4. We find that reasoning applicable here. In the case at bar, the policy's definition of "occurrence" is the same as that at issue in <u>VIG II</u>. Lacaze's claim is essentially that an unforeseen and unexpected loss to the loader was caused by a defect in the loader–mulching head combination. Thus, the damages Lacaze allegedy sustained resulted from an "occurrence" as defined within the insurance policy and interpreted by Louisiana law.

Nonetheless, Amerisure's motion is to be granted because of its second argument. The policy excludes " 'property damage' to 'your product' arising out of it or any part of it." In the context of the instant case, "your product" refers the loader and mulching head as goods "sold, handled, distributed or disposed of by" Doggett. (Doc. 43-3, p. 30, CGL policy §1.2.k; <u>Id.</u>, p. 41, CGL policy §5.21). This exclusion "reflect[s] the intent of the insurance industry to avoid the possibility that coverage under a CGL policy will be used to repair and replace the insured's defective products and faulty workmanship. The CGL policy is not intended as a guarantee of the quality of the insured's products or work." <u>Atain Specialty Ins. Co. v. Siegen 7 Devs., L.L.C.</u>, 820 F. App'x 270, 273 (5th Cir. 2020) (citing 15 LA. CIV. L. TREATISE,

INSURANCE LAW & PRACTICE § 6:21 (4th ed.) (citing McMath Const. Co. v. Dupuy, 2003–1413 (La. App. 1 Cir. 11/17/04), 897 So. 2d 677, 682, *writ denied*, 2004–3085 (La. 2/18/05), 896 So. 2d 40)). "Louisiana courts have consistently held that [this] exclusion eliminates coverage for the cost of repairing or replacing the insured's own defective work or defective product." Atain, 820 F. App'x at 273 (citing Supreme Servs. & Specialty Co. v. Sonny Greer, Inc., 958 So. 2d 634, 643, (La. 5/22/07). This policy exclusion is sometimes referred to as a "work product" exclusion. Atain, 820 F. App'x at 274.

Lacaze argues that Amerisure is at least responsible for economic loss resulting from loss of use citing Hollybrook Cottonseed Processing, L.L.C. v. Am. Guarantee & Liab. Ins. Co., 772 F.3d 1031 (5th Cir. 2014). However, Hollybrook is distinguishable from the instant case because the insurance claim in Hollybrook was for the loss of use of property other than that property provided or serviced upon by the insured. 772 F.3d 1031, 1035–1036; See also e.g. Todd Shipyards Corp. v. Turbine Service, Inc., 674 F.2d 401, 421 (5th Cir.1982) (applying work product exclusion to precluded claim against insurance provider for insured's negligent repair of ship turbine, but declining application of the same exclusion thereby allowing claim against insurance provider for loss of use of ship resulting from the negligent repair of the turbine because the rest of the ship was "indisputably property other than the insured's work product"); Martco Ltd. P'ship v. Wellons, Inc., 588 F.3d 864, 883 (5th Cir. 2009) (declining application of work product exclusions thereby allowing claim against insurance provider for loss of use plant resulting from insured's defective

work on heating system.); Houston Specialty Ins. Co. v. Ascension Insulation & Supply, Inc., 2018 WL 4031778, at *7 (W.D. La. Aug. 7, 2018), report and recommendation adopted, 2018 WL 4008988 (W.D. La. Aug. 22, 2018), reconsideration in part granted on other grounds, No. 2018 WL 5796104 (W.D. La. Nov. 5, 2018) (declining application of work product exclusion thereby allowing claim against insurance provided for loss of use and other damages to home resulting from insured's defective installation of home insulation). In the cited cases, the insured's product (or service repairing or installing a product) was a subunit whose defect resulted an alleged loss of use of the whole. In other words, the surviving claims against the insurance companies were for the loss of use of property other than that property provided or serviced upon by the insured. That is not the situation here. Lacaze's loss of use claim pertains only to property that was clearly by the insured, Doggett. Allowing Lacaze to proceed against Amerisure would contradict Louisiana policy as interpretted by the Fifth Circuit that this " 'exclusion eliminates coverage for the cost of repairing or replacing the insured's own defective work or defective product.' " Atain, 820 F. App'x at 273 (quoting Supreme Servs., 958 So. 2d at 643).

## IV. CONCLUSION

Because Lacaze fails to claim a loss of use of property other than that provided to him by Doggett, Lacaze's claim against Amerisure is precluded by the " 'property damage' to 'your product' arising out of it or any part of it" exclusion. Accordingly, Amerisure's motion for summary judgment is hereby **GRANTED** dismissing with prejudice Lacaze's claims against it.

**THUS DONE AND SIGNED** at Alexandria, Louisiana this 26th day of August, 2021.

DEE D. DRELL, JUDGE
UNITED STATES DISTRICT COURT