UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA DIVISION

| | |
|---|---|
| **LACAZE LAND DEVELOPMENT L L C** | **CASE NO. 19–cv–1477** |
| –vs– | **JUDGE DRELL** |
| **DEERE & CO INC ET AL** | **MAGISTRATE JUDGE PEREZ–MONTES** |

### RULING AND ORDER

Before the court is a motion for summary judgment filed by defendant Deere & Company, Inc. ("Deere") to dismiss with prejudice the claims filed against Deere by plaintiff Lacaze Land Development, L.L.C. ("Lacaze"). (Doc. 58). For the following reasons, Deere's motion for summary judgment is **GRANTED** in part and **DENIED** in part.

### I. BACKGROUND

At a time not disclosed in the record but prior to August 2018, Lacaze, a Louisiana limited liability company, purchased a John Deere 333GX compact track loader, skid steer ("loader") and a compatible John Deere mulching head from John Deere distributor W. L. Doggett, L.L.C., a Texas limited liability company doing business as Doggett Machinery Services ("Doggett"). Co-defendant Deere, a Delaware corporation with its principal place of business in Illinois, is the manufacturer of both the loader and the mulching head. The mulching head mounts onto the loader and is powered by a hydraulic system within the loader. At another

time not disclosed in the record the loader caught fire resulting in over $13,000 in damages.

Defendants and Lacaze negotiated the sale of a second loader subject to certain accommodations, compensation, and financing, and in late August 2018 Lacaze purchased a second loader to use with the mulching head purchased with the first loader. After using the second loader and mulching head, the second loader began experiencing overheating and hydraulic issues necessitating loader down time to circumvent another fire and repairs. Despite the repairs, overheating and hydraulic issues continued to occur. Eventually, Lacaze filed this suit in redhibition seeking rescission of the sale of the second loader and the mulching head, *inter alia*, with an approximate valuation over $80,000. Lacaze's suit does not seek rescission of the sale of the first loader.

During discovery, Lacaze felt as though Defendants were not disclosing certain discoverable documentation and filed a motion to compel. The following day, Deere filed the instant motion. Lacaze's motion was subsequently granted in part as it pertained to discoverable documentation related to both the first and second loader. Lacaze's response to Deere's instant motion relies heavily on information relinquished after the motion to compel was granted.

## II.  SUMMARY JUDGMENT STANDARD

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). A dispute of material fact is genuine if the

evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). We consider "all evidence in the light most favorable to the party resisting the motion." Seacor Holdings, Inc. v. Commonwealth Ins. Co., 635 F.3d 680 (5th Cir. 2011) (internal citations omitted). It is important to note that the standard for summary judgment is two–fold: (1) there is no genuine dispute as to any material fact, and (2) the movant is entitled to judgment as a matter of law.

The movant has the burden of pointing to evidence proving there is no genuine dispute as to any material fact, or the absence of evidence supporting the nonmoving party's case. The burden shifts to the nonmoving party to come forward with evidence which demonstrates the essential elements of his claim. Liberty Lobby, 477 U.S. at 250. The nonmoving party must establish the existence of a genuine dispute of material fact for trial by showing the evidence, when viewed in the light most favorable to him, is sufficient to enable a reasonable jury to render a verdict in his favor. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986); Duffy v. Leading Edge Products, Inc., 44 F.3d 308, 312 (5th Cir. 1995). A party whose claims are challenged by a motion for summary judgment may not rest on the allegations of the complaint and must articulate specific factual allegations which meet his burden of proof. Id. "Conclusory allegations unsupported by concrete and particular facts will not prevent an award of summary judgment." Duffy, 44 F.2d at 312 (citing Liberty Lobby, 477 U.S. at 247).

## III. LAW AND ANALYSIS

### a. Whether a rehibitory claim against the mulching head has prescribed

Deer first argues that Lacaze's rehibitory claim against the mulching head has prescribed. Generally, redhibitory claims prescribe one year after the buyer's discovery of the defect. La.C.C. art. 2534(A), (B). Deere claims that Lacaze knew there was some defect with the mulching head when he purchased the second loader in late August 2018, suit was not filed until November 2019, and thus Lacaze's claim has prescribed.

We disagree. First, we find it disingenuous to argue that Lacaze knew there was a defect in the mulching head when he bought the second loader. The sale of the second loader was predicated on warranties that the second loader and mulching head combination was fit for ordinary use. Lacaze, thus, did not have the opportunity to discover that the second loader and mulching head combination were not fit for ordinary use until Lacaze began to use the second loader in combination with the mulching head.

Alternatively, "prescription ... is interrupted when the seller accepts the thing for repairs and commences anew from the day [the seller] tenders [the thing] back to the buyer." Id. (C). Lacaze claims the second loader and mulching head combination was defective necessitating repairs to the hydraulic system of the second loader. Doggett's service records clearly illustrate that the second loader had been accepted for diagnostics and had undergone numerous repairs to the hydraulic system within one year of when Lacaze filed suit. The deposition testimony of Justin Doyle, a former

Doggett lead technician and service manager who worked on or oversaw work on Lacaze's second loader, supports the conclusion that the damages to hydraulic system resulted from the combination hookup of the second loader and the mulching head. Accordingly, while the mulching head was not repaired itself, its operation caused damages requiring repair for its continued use, which we find interrupts prescription.

### b. Whether Lacaze possessed knowledge of a defect in the second loader when he purchased the second loader

Deere next argues that it owes no warranty for defects known to Lacaze prior to the sale of the second loader. See La.C.C. art. 2521. As part of the negotiations of the second loader, Lacaze was granted the second loader on loan until Lacaze could finance the second loader. Neither party provides a date for when this loaner period began. During that loaner period, the second loader received software updates and the wind shield wiper motor was repaired. Deere argues that the conditions giving rise to the updates and repairs during the loaner period cannot form the basis of Lacaze's claim because Lacaze had knowledge of these conditions.

Deere's argument that Lacaze purchased the second loader having knowledge of defects suggest that the software updates and wiper motor repair were unsuccessful and that Lacaze purchased the second loader with knowledge that the updates and repairs were unsuccessful. That simply did not happen. Before Lacaze purchased the second loader, the wiper motor was fixed, and Lacaze was assured that the second loader was operating according to the manufacture Deere's specifications after the software updates. For La.C.C. art. 2521 to apply, Lacaze must have

knowledge that a defect existed when it purchased the second loader. After the repairs, updates, and assurances accompanying the repairs and updates, Lacaze had no reason to suspect the second loader was defective when it purchased the second loader.

### c. Whether Lacaze is able to exclude other potential causes with a fair amount of certainty

Deere next argues that Lacaze is unable to exclude other potential causes for the alleged defect with a fair amount of certainty. Moreno's, Inc. v. Lake Charles Catholic High Schools, Inc., 315 So.2d 660, 662 (La. 1975). Deere argues that there are numerous reasons why the second loader may have overheated and experienced hydraulic issues that Lacaze has not eliminated with a fair amount of certainty. Notably, Deere reaches this conclusion without consulting with the mechanics or service managers who oversaw the repairs and software updates to Lacaze's second loader. In fact, each possible reason Deere lists has been countered by Doyle who oversaw repairs and updates to Lacaze's second loader and who witnessed first hand the second loader overheating after Lacaze operated the second loader mulching head combination within design parameters.

Further,

> '[i]t is not incumbent upon the buyer to seek out, allege, and prove the particular and underlying cause of the defect which makes the thing sold unfit for the purpose intended, particularly when the thing is a complicated piece of

machinery; but it suffices if he alleges and afterwards proves as a fact that such defects exist.'

Id. (quoting Crawford v. Abbott Automobile Co., 101 So. 871 (La. 1924)). The loader and mulching head independent of each other may be considered complicated pieces of machinery. The fact that the allege defect does not manifest itself unless the loader is operating the mulching head further complicates the machinery in question. Through discovery, the deposition testimony of Doyle, and a motion to compel, Lacaze believes it has proven a defect in the combination of the loader and mulching head sufficient to defend summary judgment. Lacaze claims a defect in design because the loader's hydraulic fluid overheats whiles operating high flow units such as the mulcher under high ambient temperatures. In so claiming, it has excluded other potential causes for the alleged defect with a sufficient certainty to survive summary judgment.

### d. Whether Lacaze would have purchased the loader had he known of the defect

Deere argues that the prolific use of the second loader means that Lacaze would have still purchased the loader had Lacaze known of the defect. We disagree. Deere's argument suggest that Lacaze had been living with and accepted the manifestation of the defect the entire time. According to Lacaze, the alleged defect occurs when (1) the loader is operating a high flow attachment (2) in high ambient temperatures. (Doc. 76-4, Solution Number 111647). Both factors must exist for the manifestation, i.e. overheating of the hydraulic fluid, of the defect to occur. We do

not know to what extent the loader is used without the mulching head attachment. Nonetheless, the spring and summer of 2019 would have been the first time that the loader was operated under high ambient temperatures. Thus, Lacaze could have, and apparently did, accumulate numerous operating hours outside high ambient temperatures or without the mulching head attachment and never experience the manifestation of the defect. But that does not mean the Lacaze would have accepted the loader knowing that its use was limited or dangerous under high ambient spring and summer temperatures.

Further, we do not believe that Lacaze would have accepted the loader and mulching head combination knowing that its use is limited under high ambient spring and summer temperatures. Notably, Lacaze is in the business of land development, and Louisiana is full of wooded and overgrown regions that the mulching head was designed to clear out. Limited use of the mulching head to certain seasons would have significantly limited Lacaze's service options.

### e. Negligent repair claims against Deere

Deere also argues that Lacaze's negligent repair claims against Deere should be dismissed as precluded by the Louisiana Products Liability Act ("LPLA"). The plain language and legislative history of the LPLA demonstrates the legislature's intent to make the Act and Louisiana redhibition law the sole vehicles for a suit against a manufacturer for damages arising from a defective product. "A plaintiff may not recover from a manufacturer for damage caused by a product on the basis of any theory of liability not set forth in the LPLA." Brown v. R.J. Reynolds Tobacco

Co., 52 F.3d 524, 526 (5th Cir.1995). Notably, the LPLA does not include a provision remotely similar to negligent repair. Accordingly, Lacaze's negligent repair claims against Deere will be dismissed.

## IV. CONCLUSION

For the reasons explained above, Deere's motion for summary judgment (Doc. 58) is **GRANTED in part** dismissing **WITH PREJUDICE** Lacaze's claim of negligent repair against Deere and **DENIED in part** leaving intact all of Lacaze's remaining claims against Deere and Doggett.

**THUS DONE AND SIGNED** at Alexandria, Louisiana this 17 day of September, 2021.

DEE D. DRELL, JUDGE
UNITED STATES DISTRICT COURT